# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRENDA KEMP ) | |
| ) | |
|     Plaintiff, ) | Case No. 15-cv-4176 |
| ) | |
|     v. ) | Judge Sharon Johnson Coleman |
| ) | |
| COUNTY OF COOK, OFFICE OF THE ) | |
| CHIEF JUDGE OF THE CIRCUIT COURT ) | |
| OF COOK COUNTY, OFFICE OF THE ) | |
| TRANSITIONAL ADMINISTRATOR, ) | |
| EARL DUNLAP, individually, and PHILIPPE | |
| MAGLOIRE, individually. | |
| | |
|     Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Brenda Kemp, brought this action against Cook County, the Office of the Chief Judge of the Circuit Court of Cook County, the Office of the Transitional Administrator, Earl Dunlap, and Philippe Magloire, alleging that the defendants retaliated against her in violation of the Family Medical Leave Act, discriminated against her based on her age in violation of the Equal Protection Clause, and violated her due process rights. The defendants now move for summary judgment. For the reasons set forth herein, that motion [47] is granted.

**Background**

The following facts are undisputed. The Cook County Juvenile Temporary Detention Center provides temporary secure housing for youths 10–16 years of age who are in custody pending the adjudication of their cases. At the times relevant to this suit the plaintiff, Brenda Kemp, was the JTDC's Commissary Manager. (Dkt. 60 ¶ 2). Her direct supervisor was JTDC Deputy Executive Director Philippe Magloire. (Dkt. 53 ¶ 27).

In 1999, a civil suit was filed in this district challenging the constitutionality of the conditions of confinement in the JTDC. A Memorandum of Agreement was executed in that suit, and a

1

transitional administrator was appointed to implement that agreement. *Doe v. Cook County*, 99 C 3945, dkts. 67, 330 (N.D. Ill.). At the times relevant here, Earl Dunlap was the transitional administrator of the JTDC. *Id.* Bruce Burger was the deputy transitional administrator responsible for personnel. (Dkt. 53, ¶ 17). Louise Akins, a labor relations analyst at the JTDC, was responsible for scheduling predisciplinary and grievance hearings and processing background documents. (Dkt. 49-7 10:10–11:6).

The Cook County Juvenile Temporary Detention Center ("JTDC") contains one kitchen and 30 living units, some of which have commissaries. (Dkt. 60, ¶ 8). Kemp was initially hired by the JTDC in 1992 as a "Dietician 3," a supervisory role responsible for managing food services in the JTDC. (*Id.* ¶ 9). In that role, Kemp oversaw intermediate supervisors, cooks, food service workers, and janitors. (*Id.*).

When Dunlap became the transitional administrator, he was placed in charge of all management, personnel, purchasing, food, laundry, and programmatic functions of the JTDC and was granted the power to establish personnel policies; to create, abolish, or transfer positions; and to hire, fire, promote, transfer, and evaluate the management and staff of the JTDC. (Dkt. 53 ¶¶ 13–14). Dunlap established disciplinary procedures through which a supervisor or deputy with a personnel issue could refer that issue to deputy transitional administrator Burger, who would conduct an investigation, have a pre-disciplinary hearing with both parties present, and report his findings to Dunlap for approval or denial. (*Id.* ¶ 20).

When Dunlap took over the JTDC the Food Services Department had two managers, Kemp and "Ms. K.". (*Id.* ¶ 22). In 2008 Dunlap temporarily relieved Kemp of her duties as Manager of Food Services, citing unacceptable work performance and her participation in creating a hostile work environment. (*Id.* ¶ 23). Rather than firing or demoting Kemp, Dunlap instead created the position of Commissary Manager for Kemp. (*Id.* ¶ 25, dkt. 60 ¶ 2). As the Commissary Manager,

2

Kemp was responsible for ordering, receiving, managing, and distributing commissary inventory and for cost reconciliation. (Dkt. 60 ¶ 2).

In 2012 Magloire became Kemp's direct supervisor when food services were added to his areas of responsibility. (Dkt. 53 ¶ 27). Kemp alleges that Magloire was rude to her and "screamed" at her about her work performance and cleanliness on multiple occasions. (*Id.* ¶¶ 32–33). On November 20, 2012, Magloire inspected the commissary storage cages and found expired food products. (*Id.* ¶ 28). He directed Kemp to ensure that commissary items were consumed prior to their expiration dates. (*Id.*). On November 23, 2012 Magloire and another supervisor conducted a performance evaluation of Kemp. (*Id.* ¶ 31). The evaluation concluded that Kemp met standards, but noted that Kemp's storage areas needed to be maintained, cleaned, and organized; that food products with upcoming expiration dates needed to be rotated; and that expired items needed to be disposed of immediately. (*Id.*). It further noted that Kemp needed to develop a system to accurately track the commissary items that each center was receiving. (*Id.*). On June 13, 2013, Magloire conducted another inspection of the commissary storage cages and found a large number of expired products, some of which had expired in 2012. (*Id.* ¶ 35). As a result of this discovery, Magloire recommended that Kemp be referred to the Office of Government and Labor Relations so that a pre-disciplinary hearing could be scheduled. (*Id.* ¶ 36, dkt. 53 ¶ 20).

Louise Akins provided Kemp and Magloire notice of the date, time, and location of the hearing. (*Id.*) She also put together a pre-disciplinary packet containing the violated policy provisions, Magloire's narrative, and Kemp's prior disciplinary record. (*Id.*) Kemp's disciplinary record reflected that she had received a written reprimand in 1992. (*Id.* ¶ 45). It also reported a twenty-nine day suspension in 2005, despite that suspension having been subsequently overruled by the Cook County Employees Appeals Board and ordered removed from Kemp's personal record. (*Id.* ¶ 37).

3

On July 23, 2013, Burger held the hearing with Kemp and Magloire. At the hearing, Kemp admitted her guilt based on Louise Akins' advice that if she did so she would only receive a few days suspension. (*Id.* ¶ 41, dkt. 53 ¶ 22). Kemp did testify, however, that she had to miss work because her husband had been ill, resulting in inventory issues because she was having to "play catch up". (Dkt. 53, ¶ 43). No one brought up the Family Medical Leave Act during the pre-disciplinary hearing. (*Id.* ¶ 42).

Following the hearing, Burger recommended terminating Kemp's employment based on her violation of her duty to protect the children at the JTDC. (*Id.* ¶ 44). Burger did not know that Kemp had been on FMLA leave, and he subsequently testified that Kemp's age and use of the FMLA did not have any bearing on his decision regarding her termination. (*Id.* ¶ 46). He also testified that if Kemp's disciplinary record had only contained the 1992 reprimand he would probably have recommended her suspension rather than her discharge. (*Id.* ¶ 45). Burger provided Dunlap with his recommendation and findings. Dunlap considered them and terminated Kemp's employment. (*Id.* ¶ 47). Dunlap subsequently stated that he concurred with Burger's recommendation because he believed the expired food to be a safety issue and felt that Kemp had acted negligently and failed to take responsibility for her duties. (*Id.* ¶ 54). Burger later learned from another employee that Kemp's suspension had been overturned and requested, but never received, a copy of the decision overturning the suspension. (*Id.* ¶ 48). Kemp also learned from her coworkers that her overturned suspension had been included in her disciplinary record. (*Id.* ¶ 49). Although an employee can overturn a disciplinary decision by filing a grievance or a judicial appeal, Kemp did not file a grievance or appeal her termination. (*Id.*).

After her termination, Kemp saw her position posted on CareerBuilder with a salary of $45,000, $30,000 less than she had earned. (*Id.* ¶ 57). Other employees told her that the JTDC had decided to make a budget cut and that it wouldn't "bring her back." (*Id.*). Kemp also heard that the

4

31-year-old employee who replaced her had fewer responsibilities as Commissary Manager. (*Id.* ¶ 58; dkt. 60 ¶ 25).

Kemp admits that she was never denied FMLA leave and that she never complained about being denied FMLA leave. (Dkt. 53 ¶ 59). Kemp believes, however, that she was dismissed because her attendance was inconsistent and because she was unable to fulfill her duties as a result of her frequent leaves. (*Id.*). Before taking FMLA leave, Kemp would call, e-mail, or meet with Magloire to notify him that she was taking leave. (Dkt. 53 ¶ 18). All management-level personnel also received a monthly e-mail listing those employees who had received approval to take FMLA leave. (*Id.* ¶ 19).

Kemp identifies several employees who she alleges received more lenient disciplinary treatment than her, including Shannon King, Jackie Ferroli, Keisha Isaacs, Tiffanique Kemp[1], Aretha Hendricks, and Sherrod Dent.[2] Shannon King, for instance, was suspended three times between June 2011 and April 2013, but was not terminated. (*Id.* ¶ 32). Jackie Ferroli, who Kemp described as "young", showed up to work drunk but was not disciplined. (*Id.* ¶ 33). Keisha Isaacs was only suspended fifteen days for negligence in the performance of her duties, falsification of employment record or any other county records through misstatement or omission of pertinent facts or information, failure to follow instructions or work in accordance with county policies, and performing at less than a satisfactory level in any job classification. (Dkt 60 ¶ 36). Tiffanique Kemp, an administrative assistant, was suspended for only one day for insubordination and failure to follow a directive. (*Id.* ¶ 37). And Aretha Hendricks, a food service worker, was suspended twice for fighting or disruptive behavior and was charged with falsifying employment or other county

---

[1] It is unknown if Tiffanique is of any relation to the plaintiff.
[2] Kemp asserts that Sherrod Dent told her that he was rehired after using excessive force against a resident. This testimony constitutes unsubstantiated hearsay and therefore is not considered at summary judgment. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) ("To defeat a motion for summary judgment, however, a party may rely only on admissible evidence.").

records, failing to follow instructions, performing at a less than satisfactory level, and stealing or possessing without authorization patient, employee, or county property. (*Id.* ¶ 38).

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

As an initial matter, the Court notes that Kemp has conceded that the Office of the Chief Judge is not a proper party and should be dismissed from this case.

*Counts I and III*

Counts I and III of Kemp's complaint allege that the Office of the Transitional Administrator, Dunlap, and Magloire discharged Kemp in retaliation for exercising her FMLA rights in violation of 29 U.S.C. § 2601 *et seq.* and 42 U.S.C. § 1983. The parties' assert that, in order to make out a prima facie retaliation case under the FMLA, an employee may utilize either a direct or an indirect method of proof. *See Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014). Following the close of briefing, however, the Seventh Circuit decided *Ortiz v. Werner Enterprises, Inc.* and instructed district courts to "stop separating 'direct' from 'indirect' evidence and

6

proceeding as if they were subject to different legal standards. *See Ortiz v. Werner Enterprises, Inc.*, ---
F.3d ---, 2016 WL 4411434, at *5 (7th Cir. Aug. 19, 2016). Accordingly, in order to make out a
prima facie retaliation case under the FMLA in light of *Ortiz,* an employee need only show that the
evidence would permit a reasonable factfinder to conclude that the plaintiff's FMLA status caused
the adverse employment action at issue. *Id.* at *4.

Here, it is undisputed that Kemp's FMLA leave was statutorily protected and that her
termination constituted an adverse employment action. Kemp therefore need only establish a
dispute of material fact regarding whether a causal connection exists between her FMLA leave and
her termination, either by identifying a direct admission by the defendants or a "convincing mosaic"
of circumstantial evidence such as suspicious timing, ambiguous statements, or pretextual reasons
for termination from which a jury could reasonably infer the existence of a causal connection. *See Id.*
Kemp concedes that no direct admission of discrimination occurred here, but contends that "bits
and pieces" of evidence call the defendants' reasons for terminating her into question.

Kemp first asserts that she was treated differently than similarly situated employees who did
not engage in the same protected activity. In order to determine whether two employees are
comparable, a court will look at all relevant factors including whether they held the same job
description, were subject to the same standards, were subordinate to the same supervisor, and had
comparable experience, education, and qualifications to the extent that those were considered. *Hull
v. Stoughton Trailers, LLC.*, 445 F.3d 949, 952 (7th Cir. 2006). Courts must also consider whether the
comparators "engaged in similar conduct without such differentiating or mitigating circumstances as
would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513
F.3d 680, 690 (7th Cir. 2008) (quoting *snipes v. Ill. Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002))
(internal quotation marks omitted). Although Kemp points to other employees who were
disciplined less severely than herself, the record contains no evidence establishing that these

employees were similarly situated to Kemp with respect to their job description, employment standards, supervisors, or employment records. To the contrary, the limited evidence in this case establishes that one of the identified employees was an administrative assistant and that another was a food service worker, neither of which are comparable to Kemp's management level position. Kemp, moreover, has offered no evidence to suggest that the other employees disciplinary violations impacted the health and welfare of juvenile detainees in the same manner that her actions did. Kemp thus has not created a dispute of material fact concerning whether similarly situated employees who did not take FMLA leave received better treatment than her.

Plaintiff also contends that the stated reason for her termination was pretextual. To the extent that Kemp performed below the defendants' expectations, she contends that the "cards were stacked against her" because the defendants would not cover her position while she was taking FMLA leave, because the storage room's small size hindered her efforts to manage inventory, and because of Magloire's alleged harassment. In order to show pretext, a plaintiff must show both that the employer's nondiscriminatory reason for an adverse action was dishonest and that the employers' true reason for the action was based on discriminatory intent. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008). Here, Kemp has not identified any evidence suggesting that her firing resulted from discriminatory intent based on her FMLA status. Nor does this Court believe that the difficulties Kemp has described, absent more, are sufficient to establish that her termination was pretextual in nature. *See Russel v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995) (defining pretext as meaning "a lie, specifically a phony reason for some action"). To the contrary, the evidence reflects that Kemp was not meeting her employers' legitimate expectations. Inquiry into an employer's legitimate expectations concerns only an employer's "bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997). So long as the employer's

expectations are in good faith and without fraud and deceit, the court need only determine whether the employee met them. *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000), overruled on other grounds by *Ortiz*, 2016 WL 4411434.

Here, Kemp concedes that she was not meeting her employer's employment expectations, but she contends that those expectations "were not legitimate as they were unreasonable and surrounded by an aura of bad faith." Kemp contends that the JTDC's expectations were unreasonable because (1) when she took a leave of absence no one covered her tasks; (2) the storeroom was small; (3) she was required to keep a six month backup supply, resulting in many items not being distributed; (4) she had to have a supplier explain its date code system; (5) it was the storage room employee's job to rotate stock so that the oldest products were used first; and (6) she was required to do all the cooking and cleaning for the weekly "Plus Party". This, however, amounts to no more than a dispute over whether the defendants expected "too much" of Kemp. *Coco*, 127 F.3d at 1179. Kemp does not contend that the expectation that she would properly manage the storeroom's stock was not a good faith expectation to hold, and she has offered no evidence suggesting fraud or deceit on the part of the defendants. Accordingly, Kemp has not established a dispute of material facts supporting her FMLA retaliation claim.

*Count II*

Count II of Kemp's complaint alleges that Dunlap and Magloire terminated her because of her age in violation of the equal protection clause. In order to create a dispute of material fact for an equal protection violation premised on employment discrimination, Kemp must present evidence that the defendants discriminated against her based on her membership in a defining class and that they acted with a nefarious discriminatory purpose. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996).

The primary evidence that Kemp cites in support of finding that she was discriminated against based on her age is Dunlap's 2008 statement that he was going to "get rid of all the old employees." In order to raise an inference of discrimination, comments must be made by the decision maker, around the time of the decision, and in reference to the adverse employment action. *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007), overruled on other grounds by *Ortiz,* 2016 WL 4411434. Here, Dunlap's 2008 statement, even if it is taken as referencing age, is too remote in time from Kemp's termination five years later to demonstrate that Dunlap acted with discriminatory intent in 2013. *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002) (holding that comments made by the decisionmaker two months before the plaintiff's termination were too removed in time to evince discriminatory animus).

Kemp also contends that she was disciplined more harshly than younger employees. Kemp, however, does not identify the actual age of any of the employees she seeks to compare herself to and, as previously noted, has not established that they were similarly situated to her with respect to their job responsibilities or alleged conduct. *Cooksey v. Bd. of Educ. of City of Chicago,* 17 F. Supp. 3d 772, 797 (N.D. Ill. 2014) (Lefkow, J.). Kemp also notes that her replacement was a "much younger," lower paid employee with fewer responsibilities than her. Even if the defendants did fire Kemp to replace her with a lower paid employee, however, that would not be sufficient to establish age discrimination absent evidence that age, and not cost savings, was the motivating factor for her termination. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir. 1994). Moreover, the fact that Kemp's replacement also had fewer job duties provides a plausible alternative explanation for the salary reduction.

The defendants further point out that Magloire, Dunlap, and Burger were all over the age of fifty at the time when Kemp was terminated. Although not dispositive, the decisionmaker's membership in the same protected class as the plaintiff can be a significant factor undermining an

inference of discrimination. *Korzeniowski v. ABF Freight Sys., Inc.*, 38 F. Supp. 2d 688, 694 (N.D. Ill. 1999). Accordingly, Kemp has not presented evidence sufficient to support her age discrimination claim, and the defendants are therefore entitled to summary judgment on Count II.

*Count IV*

Count IV of Kemp's amended complaint alleges that Dunlap and Magloire violated her due process rights under the Fourteenth Amendment by terminating her without a hearing and by failing to give her notice of her right to a merit board appeal.

Due process requires a hearing of some sort prior to the discharge of an employee who holds a constitutionally protected property interest in his employment. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). When adequate post-termination proceedings exist, a pre-termination hearing need only provide "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46. A pre-termination hearing provides adequate due process when the employee receives (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell her side of the story. *Bodenstab v. County of Cook*, 569 F.3d 651, 664 (7th Cir. 2009).

Here, it is undisputed that Kemp received a written notice of Magloire's recommendation for disciplinary action and an explanation of the evidence. It is also undisputed that Kemp attended, and testified at, the subsequent hearing. Kemp, however, contends that she was deprived of her opportunity to be heard at that hearing because Louise Akins told Kemp that if she admitted her guilt at the hearing she would receive a lesser punishment. Akins, Kemp asserts, was acting as Burger's agent when she gave Kemp this advice. Kemp bases this assertion on the facts that Akins assisted in the preparations for disciplinary hearings and signed documents on behalf of Dunlap and Burger. Yet Kemp concedes that express authority to do an act can only be created by written or

spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account. Restatement (Second) of Agency § 7 cmt. c. (1958). Although Akins might have been acting as Dunlap and Burger's agent when she signed documents for them or mailed notice of a hearing, there is no evidence in the record to suggest that Dunlap or Burger did anything to suggest that Akins had authority to act as the trier of fact or to promise any outcome to Kemp. Nor, for that matter, is there anything to suggest that Kemp contemporaneously believed that Akins had the authority to make any such promise. Accordingly, Akins' advice to Kemp did not constitute "the trier of fact's persuasion" and did not deprive Kemp of her due process rights.

Kemp also contends that the defendants violated her due process rights by considering her suspension in reaching their decision. Kemp, however, identifies no authority holding that an employment decision based on incorrect information constitutes a violation of due process. Moreover, it is undisputed that Kemp, upon learning that her prior discipline had been suspended, declined to file a grievance or to otherwise challenge the consideration of her prior suspension. *See Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) (recognizing that although a plaintiff is not required to pursue state remedies in order the challenge their adequacy, a plaintiff also cannot claim that they were denied due process just because they chose not to pursue remedies that were adequate).

Kemp also claims that she was not provided with constitutionally adequate notice of her right to a merit board appeal. There is no evidence suggesting that Kemp was unaware of her appellate remedies. Rather, Kemp concedes that she did not file an appeal based on the representations of two of her coworkers that they were trying to get her reinstated. Such misplaced reliance, however, does not give rise to a constitutional violation because it is not attributable to the defendants. Kemp further asserts that appeal would have been futile because Burger would have

12

been assigned to hear her grievance appealing his prior decision. This argument must clearly fail in light of Burger's testimony that, had he known that Kemp's suspension had been overturned, he probably would not have recommended her termination. *See Richardson v. Astellas U.S. LLC Emp. Ben. Plan and Life Ins. Co.,* 610 F. Supp. 2d 947, 953 (7th Cir. 2009) (noting that the Seventh Circuit has rejected the argument that an administrative appeal is futile when the same decision-maker decides both the initial application and the appeal). Accordingly, Kemp has failed to establish material facts supporting her due process claim.

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment [47] is granted.

IT IS SO ORDERED.

Date: November 3, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge